DECISION ON OBJECTION'S TO MAGISTRATE'S DECISION.
{¶ 1} Relator, Charles Adair, filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which denied his application for permanent total disability ("PTD") compensation, and ordering the commission to find that he is entitled to that compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court. On April 30, 2004, the magistrate issued a decision including findings of fact and conclusions of law and therein recommended that this court deny relator's request for mandamus. (Attached as Appendix A.) The magistrate found the commission's denial of PTD was supported by evidence in the record and was not an abuse of discretion. Relator timely filed objections to the magistrate's decision, which objections are now before the court.
 {¶ 3} Relator's objections are primarily focused on the vocational report of Joseph E. Havranek, Ed.D., CRC, ("Havranek"). Relator asserts that the magistrate misconstrued his argument that Havranek's report failed to comply with Stateex rel. Fox v. Indus. Comm. (1955), 162 Ohio St. 569, 55 O.O. 472, 125 N.E.2d 1. Relator contests that Havranek's report was vague, insofar as it failed to provide specific information regarding the amount of time relator could sit, stand or walk without interruption. Further, relator argues that Havranek repudiated the findings in his report during his deposition testimony. We disagree, and find that the magistrate correctly assessed Havranek's report and subsequent testimony. Additionally, the magistrate correctly pointed out that the commission conducted its own vocational analysis and concluded that relator was capable of performing sustained remunerative employment. Regardless of Havranek's opinion of relator's physical capabilities, the commission, as the ultimate evaluator of non-medical vocational factors, was entitled to independently weigh the evidence and reach its own conclusion. State ex rel.Jackson v. Indus. Comm. (1997), 79 Ohio St.3d 266, 270,680 N.E.2d 1233.
 {¶ 4} Finally, relator points out that Dr. Carothers, relator's treating physician, prescribed the pain medication MS Contin and averred that this pain medication would effectively preclude sustained employment. Relator argues that the commission had a duty to consider the effects that MS Contin would have on relator's ability to maintain sustained remunerative employment and its failure to do so constitutes an abuse of discretion. The commission argues contra that this evidence relied upon by relator is without merit. The commission asserts that Dr. Carothers simply states the medication causes drowsiness. Further, the commission contests that Dr. Carothers does not mention if this medication has to be taken daily, nor does he state if the medication has to be taken at a certain time. We agree. Ultimately, the commission, not this court, is the exclusive evaluator of the weight and credibility of the evidence. State ex rel. LTV Steel Co. v. Indus. Comm. (2000),88 Ohio St.3d 284, 287, 725 N.E.2d 639. As the record contains some evidence to support the commission's findings, we must defer to its judgment. Id.
 {¶ 5} Upon review of the magistrate's decision, an independent review of the record and due consideration of relator's objections, we find the magistrate has properly determined the pertinent facts and applied the appropriate law. We, therefore, adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
Lazarus, P.J., and Petree, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Charles Adair,: Relator, : v. : No. 03AP-1130 Reading Restaurants, Inc. and : (REGULAR CALENDAR) Industrial Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on April 30, 2004 Butkovich, Schimpf, Schimpf Ginocchio Co., L.P.A., Joseph A.Butkovich and Robert E. Hof, for relator.
Jim Petro, Attorney General, and Dennis L. Hufstader, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 6} Relator, Charles Adair, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for permanent total disability ("PTD") compensation, and ordering the commission to find that he is entitled to that compensation.
Findings of Fact:
 {¶ 7} 1. Relator sustained a work-related injury on August 1, 1980, and his claim has been allowed for: "lumbosacral strain; lumbar myositis; sacroiliac joint strain; lumbar herniated nucleus pulposus with nerve root compression."
 {¶ 8} 2. On April 16, 1999, relator filed an application for PTD compensation. At the time, relator was 58 years old; indicated that he could read, write, and perform basic math; his work history consisted of work as a cook and factory worker; and he had worked 15 years following his injury.
 {¶ 9} 3. Relator's application was supported by the February 8, 1999 report of his treating physician, Dr. Thomas A. Carothers, who opined that he was permanently and totally disabled from any type of sustained remunerative employment as a result of his allowed conditions.
 {¶ 10} 4. An independent medical examination was performed by Dr. Arnold R. Penix, who issued a report dated January 5, 1999. Dr. Penix opined that relator had reached maximum medical improvement ("MMI"), could not return to his former position of employment, and noted the following restrictions:
At the present time the claimant can lift no more than 5 pounds. He is incapable of any bending, stooping or overhead reaching. He is unable to drive a commercial vehicle. His sitting tolerance is 30 minutes maximum with standing and walking of 15-20 minutes maximum. He does not qualify for the federal guidelines on sedentary work and on this basis, in my opinion, he is incapable of sustained remunerative employment.
 {¶ 11} 5. Relator was also examined by Dr. Kenneth R. Hanington, who issued a report dated July 16, 1999. Dr. Hanington opined that relator had reached MMI; assessed a 25 percent whole person impairment; opined that relator was unable to return to his former position of employment, but concluded that relator was capable of working at a sedentary level. Dr. Hanington completed an occupational activity assessment wherein he indicated that relator could sit for three to five hours; stand and walk each for zero to three hours; was unrestricted in his ability to lift, carry, push, pull, or otherwise move up to ten pounds; was precluded from climbing ladders and stairs; could occasionally use foot controls with his left lower extremity; was unrestricted in his ability to handle objects; was precluded from crouching, stooping, bending, and kneeling, and reaching at floor level; could occasionally reach overhead and at knee level; and was unrestricted in his ability to reach at waist level.
 {¶ 12} 6. A vocational evaluation was performed by Jennifer J. Stoeckel, Ph.D., and dated October 17, 1999. Dr. Stoeckel administered various tests to relator prior to opining that, in her opinion, he was permanently and totally disabled from all work activity both now and in the foreseeable future. Dr. Stoeckel opined that rehabilitation would be inappropriate given relator's age; that he was precluded from returning to his past employment; has no transferable work skills; and possesses only a marginal fourth grade education.
 {¶ 13} 7. On October 18, 1999, Joseph E. Havranek, Ed.D., CRC, prepared an employability assessment report. Based upon the reports of Drs. Carothers and Penix, there were no jobs which relator could perform. However, based upon the report of Dr. Hanington, Mr. Havranek opined that relator could perform the following jobs: surveillance system monitor; hand mounter; microfilm document preparer; information clerk; telephone solicitor; and food checker. Mr. Havranek concluded that, at age 58, relator would have moderate work adjustment issues, that his fourth grade education would present him with moderate to major work adjustment issues, and that he did not have any transferable skills.
 {¶ 14} 8. On November 16, 1999, relator filed a motion to depose Mr. Havranek.
 {¶ 15} 9. The motion was granted and Mr. Havranek's deposition was taken on March 9, 2000. The deposition was requested because of an alleged substantial disparity between the reports of Mr. Havranek and Dr. Stoeckel. Specifically, relator indicated that Mr. Havranek failed to take into consideration the vocational testing conducted by Dr. Stoeckel.
 {¶ 16} 10. When specifically asked whether any of the information that had been brought to his attention would cause him to change his opinion, Mr. Havranek indicated that his opinion remained the same. (Tr. at 17.)
 {¶ 17} 11. Relator's application was heard before a staff hearing officer ("SHO") on April 20, 2000, and resulted in an order denying the requested compensation. The SHO specifically relied upon the report of Dr. Hanington and concluded that relator was capable of performing sedentary employment within the limitations and capabilities set forth in Dr. Hanington's medical report and occupational activity assessment form. After noting the vocational evidence presented, the SHO conducted its own analysis of the nonmedical vocational factors and stated as follows:
The Staff Hearing Officer finds that the claimant is 58 years old, has work experience as a cook and factory worker and a formal education of 4th grade. The claimant had participated in a rehabilitation program in 1984 where he was tested for employment potential. The Staff Hearing Officer reviewed the report contained in the claim file and the testing results which were reported therein. The claimant was tested for his educational abilities and was found to read at a 5th grade equivalent. The vocational evaluator opined that the claimant demonstrated the ability to add and subtract whole numbers and perform measurements to 1/2 inch specifications. The evaluator opined that the claimant appeared to learn best with demonstration techniques. The Staff Hearing Officer finds that the claimant has a similar profile today as assessed by Dr. Stoeckel and Dr. Havranek. The Staff Hearing Officer further finds that the claimant's age is not a factor which would prevent him from adapting to new work rules, processes, methods, procedures and tools involved in a new occupation. The Staff Hearing Officer further finds that the claimant's education is a limitation in that it would prevent him from performing occupations involving literacy. However, the claimant's education as reported by the testers is adequate in performing entry level, unskilled occupations. The Staff Hearing Officer further finds that the claimant's lack of transferable work skills does not prevent him from performing unskilled, entry-level work. The Staff Hearing Officer finds that the following employment options are within the claimant's ability considering his age, education and work experience and residual functional capacities due to the allowed orthopedic conditions in the claim: surveillance system monitor, hand mounter, microfilm document preparer, telephone solicitor and food checker. Accordingly, the Staff Hearing Officer finds that the claimant is able to engage in sustained remunerative employment.
 {¶ 18} 12. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 19} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 20} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus.Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephensonv. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v.Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 21} Relator raises two issues in this mandamus action: (1) the report of Mr. Havranek does not constitute some evidence upon which the commission could rely as that report was based entirely upon an assumption as to the physical restrictions noted by Dr. Hanington and was based only on possibilities and not probability; and (2) the commission abused its discretion by relying upon a report which was 15 years old, even though the Ohio Administrative Code requires that medical examinations relied upon must be performed within 15 months prior to the date of the filing of the application for PTD compensation. For the following reasons, this magistrate finds that relator has not demonstrated that the commission abused its discretion.
 {¶ 22} In his first argument, relator contends that Mr. Havranek's report does not constitute some evidence upon which the commission could rely because his report is based entirely on possibilities and not probabilities. Relator contends that it was improper for Mr. Havranek, a vocational expert, to rely upon Dr. Hanington's findings with regard to relator's physical restrictions.
 {¶ 23} Relator cites Fox v. Indus. Comm. (1955),162 Ohio St. 569, and State ex rel. Yellow Freight Sys., Inc. v. Indus.Comm. (1998), 81 Ohio St.3d 56, for the proposition that a physician's testimony relied upon by the commission to determine PTD compensation must be equivalent to an expression of probability and not mere possibility. In Fox, the court held as follows at paragraph one of the syllabus:
 {¶ 24} n order to establish a right to workmen's compensation for harm or disability claimed to have resulted from an accidental injury, it is necessary for the claimant to show by a pre-ponderance of the evidence, medical or otherwise, not only that his injury arose out of and in the course of his employment but that a direct or proximate causal relationship existed between his injury and his harm or disability.
 {¶ 25} Thereafter, in Yellow Freight, the Supreme Court of Ohio granted a writ of mandamus after finding that there was no evidence attributing the claimant's medical condition to his allowed condition and that the commission had abused its discretion by awarding the claimant temporary total disability compensation. The commission had argued that the causal connection could be inferred based on a reasonable probability that the claimant's injury had generated his medical condition. However, citing Fox, the court disagreed and indicated thatFox specifically requires direct medical testimony or other medical evidence to establish causation in proving a claimant's eligibility for workers' compensation.
 {¶ 26} In the present case, relator is arguing that, because Mr. Havranek's vocational report was based completely on Dr. Hanington's medical report regarding relator's physical restrictions, Mr. Havranek's vocational report cannot constitute some evidence upon which the commission could rely. For obvious reasons, relator's argument fails.
 {¶ 27} In the present case, relator's claim has been allowed for certain conditions. Relator filed his application for PTD compensation supported by the medical report of Dr. Carothers. Thereafter, both Drs. Penix and Hanington examined relator and issued medical reports of their own. Vocational reports were then prepared by Dr. Stoeckel and Mr. Havranek. Both vocational experts cited to the medical evidence in the record and based their opinions as to whether or not relator was capable of performing some sustained remunerative employment upon the medical assessments made by the doctors. There is no Fox
problem where a vocational expert relies upon an otherwise valid and proper physician's report in rendering a vocational assessment.
 {¶ 28} Relator also contends that Mr. Havranek's report could not be relied upon because he repudiated that report in his deposition testimony. As such, based upon State ex rel. Zamorav. Indus. Comm. (1989), 45 Ohio St.3d 17, and the cases which followed, relator contends that Mr. Havranek's report did not constitute some evidence upon which the commission could rely. This magistrate disagrees.
 {¶ 29} During the deposition, counsel questioned Mr. Havranek regarding the fact that Dr. Hanington had indicated that relator was precluded from bending. Counsel inquired as to how Mr. Havranek defined "bending." Counsel asked Mr. Havranek to consider, hypothetically, that bending would be defined as follows: an employee is seated at their work station; then the employee stands up because the employee needs to have the ability to stand for 15 to 20 minutes as they cannot sit any longer; the employee, in counsel's opinion, would then have to bend forward to reach their work station. Counsel asked Mr. Havranek to consider the fact that relator would have been completely precluded from bending forward at the waist in the slightest. Based upon counsel's definition of the word "bending," Mr. Havranek indicated that relator probably could not perform work as a surveillance system monitor or an information clerk and that he might be prohibited from the hand mounter, microfilm document, telephone solicitor, and food checker jobs as well. Based upon this, relator contends that Mr. Havranek's vocational report has been repudiated.
 {¶ 30} While it is true that an equivocal or inconsistent report cannot be relied upon, see State ex rel. Paragon v.Indus. Comm. (1983), 5 Ohio St.3d 72, and that a report cannot be relied upon if it has later been repudiated, this magistrate finds that that has not happened in the present case. Relator has so restrictively defined the word "bending," that relator would be precluded from performing numerous everyday tasks which he told Dr. Stoeckel that he did perform. For instance, according to Dr. Stoeckel's report, relator is able to bathe and dress himself. According to counsel's definition of the word "bending," this task would be impossible. Furthermore, he is able to perform some light housework such as vacuuming and washing the dishes. Relator is still able to fish; however, not as often as he did before. All of the above activities require a limited amount of bending which is not what is intended in a medical report when an injured worker is precluded from "bending." Because there is no support in the case law for such a restrictive definition of the term "bending," this magistrate finds that relator is incorrect in arguing that Mr. Havranek repudiated his report with his deposition testimony. Furthermore, even if this court were to consider otherwise, the commission conducted its own vocational analysis and concluded that relator was capable of performing some remunerative employment. Even if Mr. Havranek was of the opinion that relator could not perform those jobs which he listed because he could not bend, the commission, as the ultimate evaluator of the nonmedical disability factors, was certainly entitled to reach a different result. See, e.g., State ex rel.Singleton v. Indus. Comm. (1994), 71 Ohio St.3d 117. As such, relator's first argument is not well-taken.
 {¶ 31} Relator also contends that the commission abused its discretion by relying upon a medical report which was submitted more than 15 months prior to the date of the filing of the application for PTD compensation in contravention of Ohio Adm. Code 4121-3-34(C)(1), which provides that each application for PTD compensation must be accompanied by medical evidence indicating that the medical examination upon which the report is based was performed within 15 months prior to the date of the filing of the application for PTD compensation.
 {¶ 32} In denying relator's application for PTD compensation, the SHO noted as follows:
* * * The claimant had participated in a rehabilitation program in 1984 where he was tested for employment potential. The Staff Hearing Officer reviewed the report contained in the claim file and the testing results which were reported therein. The claimant was tested for his educational abilities and was found to read at a 5th grade equivalent. The vocational evaluator opined that the claimant demonstrated the ability to add and subtract whole numbers and perform measurements to 1/2 inch specifications. The evaluator opined that the claimant appeared to learn best with demonstration techniques. The Staff Hearing Officer finds that the claimant has a similar profile today as assessed by Dr. Stoeckel and Dr. Havranek. * * *
 {¶ 33} Relator's argument fails for two reasons. First, a vocational report does not constitute a medical examination and would not fall under the purview of Ohio Adm. Code4121-3-34(C)(1). Second, the SHO noted that she had reviewed the 1984 rehabilitation report and compared it with the vocational evidence submitted with relator's application and found that the assessments of the evaluators had remained the same. As such, the hearing officer noted that relator's abilities had not changed in the 15 years since the rehabilitation report issued in 1984. Nowhere in the commission's order does the SHO indicate that she has relied upon that 1984 report. Instead, it is merely noted as further evidence of relator's abilities. As such, relator's argument is not well-taken and is overruled.
 {¶ 34} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying his application for permanent and total disability compensation and this court should deny relator's request for a writ of mandamus.
 /s/ Stephanie Bisca Brooks
STEPHANIE BISCA BROOKS MAGISTRATE